IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

IN RE:  NIKI L. BAKER, Debtor                               No. 5:19-bk-71061
                                                                                      Ch. 13

ORDER AND OPINION

Before the Court are the following:  Crain K of Fayetteville, LLC's [Crain or creditor] *Motion for Relief from Stay,* filed June 26, 2019; the debtor's *Response to Motion for Relief from Automatic Stay*, filed June 27, 2019; the debtor's *Objection to Claim*, filed June 26, 2019; Crain's *Response to Objection to Claim*, filed July 22, 2019; and Crain's *Objection to Confirmation of Amended Plan,* filed August 6, 2019.  The Court held a hearing on the motion, objections, and responses on September 11, 2019 [September 11 hearing].  Todd F. Hertzberg appeared on behalf of the debtor.  Stephen L. Gershner appeared on behalf of Crain.  At the conclusion of the hearing, the Court took the matters under advisement.  For the reasons stated below, the debtor's *Objection to Claim* is sustained in part.  Further, Crain's *Motion for Relief from Stay* is denied and its *Objection to Confirmation of Amended Plan* is sustained in part.

**Jurisdiction**

The Court has subject matter jurisdiction under 28 U.S.C. § 157(b)(1).  These matters are core proceedings under 28 U.S.C. § 157(b)(2)(B), (G), and (L) and are deemed contested matters under Federal Rule of Bankruptcy Procedure 9014.  This order contains findings of fact and conclusions of law under Federal Rule of Bankruptcy Procedure 7052(a)(1).

**Background**

On March 2, 2019, the debtor purchased a vehicle from Crain for her personal use.  The debtor and Crain executed a retail installment sales contract [the contract], which Crain immediately assigned to Ally Financial.  On April 17, 2019, the debtor filed her chapter 13 bankruptcy case.  On June 21, 2019, Ally Financial reassigned the contract to Crain.  On June 26, 2019, Crain filed a motion for relief from the automatic stay and proof of

claim in the debtor's case. Crain's claim consisted of principal of $25,101, accrued interest of $132.17 owed as of the petition date, and $1500 in post-petition attorney fees. On the same day, the debtor filed her objection to Crain's claim pursuant to 11 U.S.C. § 506(b), objecting to the portion of the claim seeking post-petition attorney fees.[1]

On July 18, 2019, debtor filed her amended chapter 13 plan. On August 6, 2019, Crain filed its objection. On July 22, 2019, Crain filed its response to the debtor's objection to its claim, arguing that the "hanging paragraph" of 11 U.S.C. § 1325(a)(9) makes § 506 inapplicable to a 910-car claim.[2] Specifically, Crain argued that "[t]he § 506(b) requirement of equity in a secured creditor's collateral for allowance of its attorney's fees does not apply to Crain K's secured claim." *Response to Objection to Claim*, ¶ 8. Crain further contended that confirmation of the debtor's chapter 13 plan required payment of the attorney fees pursuant to § 1325(a)(5)(B)(ii)(I)(aa). *Id.* at ¶ 9.

As additional support for its claim for post-petition attorney fees, Crain referenced the contract, which states in relevant part:

> 3.c. **You may have to pay collection costs.** If we hire an attorney to collect what you owe, you will pay the attorney's fee and court costs as the law allows.[3]

---

[1] The debtor's objection states: "Pursuant to 11 U.S.C. Section 506(b), attorneys fees and interest are only allowed if the value of the collateral exceeds the value of the debt which is not the case with this automobile. Hence the claim should be disallowed to the extent of the interest and fees added to the amount owing." Debtor's *Objection to Claim,* ¶ 1.

[2] "Because the hanging paragraph is unnumbered and follows § 1325(a)(9), it is often cited as § 1325(a)(9)(*)." *In re Littlefield,* 388 B.R. 1, 2 n.4 (Bankr. Me. 2008). The hanging paragraph reads in relevant part as follows:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day period preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor[.] 11 U.S.C. § 1325(a)(9)(*).

[3] In paragraph 3 of its *Response to Objection to Claim*, Crain inaccurately quoted the contract as follows: "3.c. **You have to pay collection costs**. If you hire an attorney to

>   **7. APPLICABLE LAW.** Federal law and the law of the state of our address shown on the front of this contract apply to this contract.

Because the address on the front of the contract is Fayetteville, Arkansas, Crain contends that Arkansas law applies, and, in particular, Arkansas Code Annotated § 16-22-308.

At the September 11 hearing, the parties stipulated that the value of the vehicle in question is less than the debt owed; that the debtor purchased the vehicle within 910 days of the date she filed her petition; and that the attorney fees requested in Crain's claim were incurred post-petition. The debtor's attorney stipulated that the amount to be paid under the plan was insufficient, but also represented that the chapter 13 trustee's confirmation order would include a payment in an amount sufficient to confirm the plan. The debtor's attorney also stated that the debtor was only contesting the post-petition attorney fees included in Crain's claim, clarifying that the issue before the Court is whether a 910-car creditor can "tack on" post-petition attorney fees to its secured claim. Crain's attorney argued that the debtor's plan was not feasible and that because the debtor never made a payment prior to filing her bankruptcy case,[4] she had neither filed her case nor proposed her plan in good faith. He further asserted that relief from stay should be granted because of a lack of adequate protection. At the September 11 hearing, Crain's attorney reiterated his written argument that because § 506(b) does not apply to a 910-car claim, the debtor's plan must provide for payment of post-petition attorney fees in accordance with non-bankruptcy law under § 1325(a)(5). According to Crain, the relevant non-bankruptcy law in this instance consists of the parties' pre-petition contractual agreement and Arkansas Code Annotated §16-22-308.

During the hearing, the debtor testified that (1) she had maintained full insurance coverage on the vehicle; (2) her plan payments to the chapter 13 trustee are "payroll

---

collect what you owe, you will pay the attorney's fee and court costs as the law allows."

[4] The debtor's first payment was due on April 17, 2019, the same day that she filed her chapter 13 case.

3

deducted"; (3) the vehicle was purchased for better gas mileage; (4) the vehicle is properly licensed; (5) her current proposed plan provides for pre-confirmation adequate protection payments of $190 per month; (6) she proposes to pay Crain the amount of $25,233.17, representing principal and accrued interest on the day the petition was filed, together with 6.2% interest over the life of the plan; and, (7) upon confirmation of her amended plan, plan payments of $488 per month would be paid to Crain on its claim.

**Law & Analysis**

Section 506 of the bankruptcy code "allows the bifurcation of the claims of secured creditors into secured and unsecured claims based on the value of the creditor's collateral at the time of the bankruptcy filing." *In re Fleming*, 339 B.R. 716, 722 (Bankr. E.D. Mo. 2006). Under § 506, a chapter 13 debtor may generally "strip down a car creditor's secured claim to the current value of the collateral and treat the balance owed the secured creditor as an unsecured claim."[5] *Id.* However, the hanging paragraph of § 1325(a)(9) provides that § 506 "does not apply to secured creditors with purchase money security interests in vehicles acquired by a debtor for personal use within 910 days prior to the bankruptcy filing." *Id.* Because of the hanging paragraph, a debtor cannot "cram down" a 910-car creditor's secured claim to the value of the creditor's collateral. *Id.* Instead, a 910-car creditor's "secured claim is allowed in the amount of the balance owed as of the petition date." *Id.* Here, the primary question before the Court is whether a 910-car creditor may include post-petition attorney fees in its secured claim. The Eighth Circuit has not determined whether a 910-car claim may include post-petition attorney fees. In fact, there are very few courts that have decided the issue of whether post-petition attorney fees should be allowed in 910-car claims. *See In re Lucier,* No. 07-30658, 2007 Bankr. LEXIS 4486, at *9 (Bankr. N.D. Dec. 5, 2007) (holding that an oversecured 910-car creditor could not include post-petition attorney fees in its claim because the hanging paragraph of § 1325(a)(9) makes § 506 inapplicable to 910-car claims); *In re Jenkins,* No. 08 B 5297, 2009 Bankr. LEXIS 1682, at *6 (Bankr. N.D. Ill. June 15, 2009) (allowing

---

[5] Section 506(b) provides that an oversecured creditor is entitled to include in its claim "any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose." 11 U.S.C. § 506(b).

4

post-petition attorney fees on 910-car claim); and *In re Kiser,* No. 14-71381, 2015 Bankr. LEXIS 134, at *7-8 (Bankr. W.D. Va. Jan. 16, 2015) (disallowing post-petition attorney fees because claimant failed to provide any evidence that the fees requested were reasonable). For the reasons discussed below, this Court finds that an undersecured 910-car claimant is not entitled to include post-petition attorney fees in its secured claim.

As an initial matter, the Court finds it relevant that the bankruptcy system is premised upon the theory that "everything stops at a certain date." *See Sexton v. Dreyfus,* 219 U.S. 339, 344 (1911). Accordingly, § 502(b) provides:

> if [an] objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States *as of the date of the filing of the petition*, and shall allow such claim in such amount . . . ."

11 U.S.C. § 502(b) (emphasis added). By using the word "shall," § 502(b) mandates that the court determine the amount of a claim as of the date of the filing of the petition. 11 U.S.C. § 502(b); *see also In re Waterman*, 248 B.R. 567, 573 (B.A.P. 8th Cir. 2000) (holding that "generally, a creditor's claim is determined as of the date of the filing of the bankruptcy petition [internal citation omitted] and that amounts incurred post-petition are not usually permitted as part of the claim"); *but see Summitbridge Nat'l Inv. III, LLC v. Faison*, 915 F.3d 288, 292 (4th Cir. 2019) (characterizing post-petition fees as allowable contingent claims). Because the amount of post-petition attorney fees cannot be determined as of the petition date, the Court finds that such fees may not be included in the amount of the claim, unless another provision of the code provides an exception to § 502(b)'s directive to determine the amount of a claim as of the petition date.

The code expressly authorizes the recovery of post-petition attorney fees in certain circumstances, for example:

> (i) Recovery of post-petition attorneys' fees under § 506(b) is limited to oversecured creditors;
>
> (ii) Section 330 permits a court to award reasonable compensation for attorneys' fees incurred during the bankruptcy by the trustee, an authorized committee, or the debtor;

5

> (iii) Section 503 allows as an administrative expense reasonable compensation for attorneys' services to the extent that the services benefitted the estate;
>
> (iv) Section 362(k) provides for "actual damages, including costs and attorneys' fees" to an individual injured by a violation of the automatic stay; and
>
> (v) Section 523(d) provides for an award of reasonable attorneys' fees for a successful debtor in certain nondischargeability actions.

*In re Seda France, Inc.*, No. 10-12948-CAG, 2011 Bankr. LEXIS 2874, at *6-8 (Bankr. W.D. Tex. July 22, 2011). However, there is no code provision that expressly allows an undersecured 910-car creditor to recover post-petition attorney fees. Therefore, the Court finds that allowing an undersecured 910-car creditor to recover post-petition attorney fees from the estate would impermissibly expand the express exceptions that Congress has provided for in the code. *See id.*, at *9.

Further, § 1322(b)(2) "expressly permits modification of [a 910-car creditor's] rights, subject to the limitations set forth in [§] 1325 of the Bankruptcy Code."[6] *In re Fleming*, 339 B.R. at 724. Section 1325 "does not say that loans secured by 910 vehicles cannot be modified; it merely says that section 506 shall not apply." *In re Robinson*, 338 B.R. 70, 75 (Bankr. W.D. Mo. 2006); *see also In re Fleming*, 339 B.R. at 724 (finding that the hanging paragraph of § 1325(a) places no prohibition on modification of 910-car claims other than bifurcation).[7] The Supreme Court has observed that "[b]ankruptcy

---

[6] 11 U.S.C. § 1322(b)(2) provides that the plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims[.]"

[7] Following the introduction of the hanging paragraph when BAPCPA was enacted, many courts wrestled with the question of whether the hanging paragraph had abrogated the Supreme Court's holding in *Till*. *See Till v. SCS Credit Corp.,* 541 U.S. 465 (2004) (establishing the method for determining an adequate interest rate when a plan is confirmed over the objection of a secured creditor). Initially, 910-car claimants argued that the hanging paragraph required debtors to pay their pre-petition, contractual interest

proceedings constantly modify and affect the property rights established by state law." *Wright v. Union Cent. Life Ins. Co.,* 304 U.S. 502, 517 (1938).  In addition, it is a basic tenet of preemption that federal law must govern "when the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 706 (1984) (quoting *Hines v. Davidowitz,* 312 U.S. 52, 67 (1941)).  Although Crain correctly asserted that state law defines its rights, state law determines those rights only to the extent that they are not modified by the bankruptcy code.  *See In re Fleming*, 339 B.R. at 724.  "If a creditor . . . could continue to enforce [its] state law rights after the initiation of bankruptcy proceedings, the bankruptcy laws would be meaningless."  *S. Cent. Bell Tel. Co. v. Simon* (*In re Fontainebleau Hotel Corp.*)*,* 508 F.2d 1056, 1059 (5th Cir. 1975).  "Before the filing of the petition, [a creditor] had certain rights under state law.  After the filing of the petition, the demands of the bankruptcy laws take precedence." *Id.*  The "very purpose" of the bankruptcy laws "is to suspend the normal operation of rights and obligations between the debtor and his creditors." *Id.*  However, when Congress sought to protect a certain type of creditor from having its rights modified, it did so.  *See In re Fleming*, 339 B.R. at 723.  Specifically, the code expressly prohibits a debtor from modifying the rights of a creditor whose claim is secured only by a security interest in real property that is the debtor's principal residence.  *See* 11 U.S.C. § 1322(b).  Had Congress sought to protect 910-car creditors the same way, it could have mentioned them in § 1322(b)(2) or included protective language in § 1325 where it provided special treatment for 910-car creditors.  *See In re Fleming*, 339 B.R. at 722-23.  For all these reasons, the Court finds

---

rates in their chapter 13 plans.  Almost unanimously, bankruptcy courts held that the hanging paragraph had not affected or abrogated *Till.  See In re Robinson,* 338 B.R. 70 (Bankr. W.D. Mo. 2006) (finding that Congress did not modify § 1322(b)(2); therefore, *Till* still applied and the debtor was not required to pay the contract interest rate on 910-car loan); *In re Scruggs,* 342 B.R. 571 (Bankr. E.D. Ark. 2006) (applying *Till* even when contractual rate was zero); *In re Harrison,* 394 B.R. 879 (Bankr. N.D. Ill. 2008) (finding that *Till* rate applied during pendency of chapter 13 because no part of § 1325(a) prohibits a debtor from employing § 1322(b)(2) to modify the rights of a 910-car creditor); *In re Fleming,* 339 B.R. 716 (Bankr. E.D. Mo. 2006) (BAPCPA did not alter § 1322(b)(2)); *In re Bufford*, 343 B.R. 827 (Bankr. N.D. Tex. 2006); *DaimlerChrysler Fin. Servs. N. Am. LLC v. Griffin* (*In re Wilson*), 374 B.R. 251 (10th Cir. 2007); and *In re Brown,* 346 B.R. 246 (Bankr. M.D. Ga. 2006).

7

that the debtor's objection to Crain's claim for post-petition attorney fees should be sustained and $1500 of Crain's claim disallowed.

Relief from stay may be granted for cause, including a lack of adequate protection, or when the debtor has no equity in the property and the property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(1)-(2). The Court finds that Crain failed to prove cause under § 362(d)(1): there is no evidence before the Court that the debtor's proposal to pay Crain pre-confirmation adequate protection payments of $190 per month and post confirmation payments of $488 per month is insufficient to adequately protect Crain's interest. While it is undisputed that the debtor has no equity in the property, the Court finds that the debtor proved that the vehicle is necessary for her reorganization. Therefore, the Court denies relief under § 362(d)(2). For these reasons, the Court denies Crain's *Motion for Relief*.

Further, the Court finds that Crain did not prove that the filing of the debtor's case or plan was not in good faith. "Good faith is not defined by the Bankruptcy Code." *In re Wertz*, 557 B.R. 695, 702 (Bankr. E.D. Ark. 2016). The Eighth Circuit evaluates good faith under the "totality of circumstances" test. *Id.* (quoting *Handeen v. LeMaire* (*In re LeMaire*), 898 F.2d 1346, 1349 (8th Cir. 1990)). The factors considered under a totality of the circumstances test include (1) whether the debtor stated her debts and expenses accurately; (2) whether the debtor made any fraudulent misrepresentations to mislead the bankruptcy court; or (3) whether the debtor has unfairly manipulated the bankruptcy code. *Id.* (citing *Educ. Assistance Corp. v. Zellner,* 827 F.2d 1222, 1227 (8th Cir. 1987)). *See also Hansmeier v. McDermott* (*In re Hansmeier*)*,* 558 B.R. 299 (B.A.P. 8th Cir. 2016) (using totality of the circumstances test in determining whether a chapter 13 petition was filed in bad faith). There is no evidence before the Court that the debtor has not stated her debts or expenses accurately, that she has made any fraudulent misrepresentations to mislead the Court, or that she has unfairly manipulated the bankruptcy code. Accordingly, the Court finds that Crain failed to prove bad faith either in the debtor's filing of her chapter 13 petition or in the filing of her proposed plan.

As to Crain's *Objection to Confirmation to Amended Plan,* the debtor admitted that the amount to be paid under her current proposed plan was insufficient to fund the plan. Therefore, Crain's objection to the amended plan is sustained, in part. Within 28 days from the entry of this order, the debtor shall file an amended plan that will provide payments in an amount sufficient to pay Crain's claim of principal and interest, without payment of the post-petition attorney fees. Finally, Crain's argument that the debtor's plan is not feasible is now moot because of this Court's order requiring the debtor to file an amended plan.

IT IS SO ORDERED.

/s/ Ben Barry
Ben Barry
United States Bankruptcy Judge
Dated: 12/03/2019

cc: Todd F. Herzberg, attorney for debtor
Stephen L. Gershner, attorney for creditor
Joyce Bradley Babin, chapter 13 trustee